C:\Documents and Settings\JThayer\Local Settings\Temporary Internet Files\Content.IE5\VEKBVDG9\Complaint (07-14-05).doc
7/15/2005 6:49 PM

Richard S. Busch (SB-5613)
KING & BALLOW
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201
Telephone:  (615) 259-3456
Facsimile:   (615) 726-5417

Kenneth E. Gordon ( KG 5703)
GORDON, GORDON & SCHNAPP, P.C.
437 Madison Avenue, 39th Floor
New York, New York 10022
(212) 355-3200 Telephone
(212) 355-3292 Facsimile

Attorneys for Plaintiffs
BRIDGEPORT MUSIC INC. and
SOUTHFIELD MUSIC, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK
………………………………………………..x

| | | |
|---|---|---|
| *BRIDGEPORT MUSIC INC. and,* *SOUTHFIELD MUSIC, INC.,* | : | COMPLAINT FOR DECLARATORY JUDGMENT, PERMANENT INJUNCTIVE |
| | : | RELIEF AND DAMAGES FOR COPYRIGHT INFRINGEMENT |
| Plaintiffs, | : | |
| vs. | | |
| *UNIVERSAL MUSIC GROUP, INC.,* *NAPSTER, LLC, APPLE COMPUTER, INC.,* | : | |
| *and YAHOO!, INC.,* | : | JURY DEMAND |
| Defendants. | : | 05 Civ. 6430 (VM) (THK) ECF Case |
| | x | |

Plaintiffs   BRIDGEPORT MUSIC INC., ("Bridgeport") and SOUTHFIELD MUSIC,

INC. ("Southfield") (collectively "Plaintiffs") by their undersigned counsel, bring this action

for declaratory judgment, permanent injunctive relief and damages based on copyright

infringement and related claims pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §101, *et seq.* ("the Copyright Act") .  As described in more detail below, below, defendant Universal Music Group, Inc. ("UMG") has willfully infringed Plaintiffs' copyrights by copying the compositions identified in Exhibit A attached to, and by this reference incorporated into, this Complaint (the "Copyrighted Compositions") without authority, by  issuing digital download licenses to defendants Napster, Inc. ("Napster"), Apple Computer, Inc. ("Apple") and Yahoo! Inc. ("Yahoo")(Apple, Napster and Yahoo are collectively referred to in this Complaint as the "DPD Defendants"), by willfully inducing the DPD Defendants to commit infringement, and by failing to take corrective action when Plaintiffs notified Defendant of the infringement.  The DPD Defendants, in turn, infringed Plaintiffs' copyrights in the Copyrighted Compositions, by copying plaintiffs' compositions, allowing digital downloads of songs embodying the Copyrighted Compositions, and by failing to secure a license when Plaintiffs notified them of the infringement.  As a result, Plaintiffs are entitled to actual and punitive damages or, in the alternative, statutory damages in the amount of $150,000 per infringement, as available under the law.

## I.  PARTIES

1.      Plaintiff Bridgeport is a Michigan corporation with its principal offices located at 18500 West 10 Mile Road, Southfield, Michigan 48075. At all times relevant, Bridgeport was, and continues to be, engaged in, among other things, the business of music publishing and otherwise commercially exploiting musical composition copyrights.

2.      Plaintiff Southfield is a Michigan corporation with its principal offices located at 18500 West 10 Mile Road, Southfield, Michigan 48075.  At all times relevant,

Southfield was, and continues to be, engaged in, among other things, the business of music publishing and otherwise commercially exploiting musical composition copyrights.

3.      Plaintiffs are informed and believe, and on that basis aver, that Defendant Universal Music Publishing, Inc., doing business as Universal Music Publishing Group ("Universal"), is a California corporation.  Universal is, and at all relevant times was, engaged in, among other things, the business of music publishing and otherwise commercially exploiting musical composition copyrights. Universal is licensed to do business in the state of New York, and may be served with process in care of its agent, CT Corporation System, 111 Eighth Avenue, New York, New York 10011.

4.      Plaintiffs are informed and believe, and on that basis aver, that Defendant Napster, LLC is a Delaware limited liability company with its principal office located at 28 West 44th Street, Suite 620, New York, New York 10036.

5.      Plaintiffs are informed and believe, and on that basis aver, that Defendant Apple Computer, Inc. is a California corporation with its principal offices located at 1 Infinite Loop, Cupertino, California 95014.  Apple is licensed to do business in the State of New York, and may be served with process in care of its agent, CT Corporation, 111 Eighth Avenue, New York, New York 10011.

6.      Plaintiffs are informed and believe, and on that basis aver, that Defendant Yahoo! Inc., is a Delaware corporation with its principal offices located at 701 First Avenue, Sunnyvale, California 94089.  Yahoo is licensed to do business in the State of New York, and may be served with process in care of its agent, Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

7.     UNIVERSAL and the DPD Defendants are referred to below, collectively, as the "Defendants."

## II.  JURISDICTION AND VENUE

8.     The jurisdiction of this Court is based upon 28 U.S.C. §§1331 and 1338(a) in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. §101 *et seq.*), which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. §1338(a).

9.     Personal jurisdiction over each of the Defendants is proper in this Court, among other reasons, on the grounds that Defendants are licensed to do business in the State of New York, Defendants and/or Defendants' agents transact business in the State of New York, and on the further grounds that Defendants' copyright infringement, among other wrongful conduct alleged herein, occurred, in part, in the State of New York and in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §§1391 (b) and (c) and 1400(a).

## III. ALLEGATIONS COMMON TO ALL CLAIMS

11.     Plaintiffs are the sole copyright owners in and to copyrighted musical compositions, including but not limited to those compositions listed on Exhibit A attached to, and by this reference incorporated into, this Complaint.  All such compositions, including but not limited to those identified on Exhibit A, are referred to in this Complaint as the "Copyrighted Compositions."

12.     Plaintiffs have complied with all of the laws pertinent to the Copyrighted Compositions as copyrighted works and, in particular, have applied for and received

-4-

Certificates of Copyright Registration from the Register of Copyrights for the Copyrighted Compositions.

13.     Plaintiffs are compensated for use of the Copyrighted Compositions primarily from the licensing of musical compositions and from the licensing fees from the reproduction, distribution and performances or other commercial exploitation of their copyrighted works.

14.     On June 1, 1991, Bridgeport entered into a document entitled Settlement Agreement (the "PRI Agreement") with PolyGram Records, Inc. ("PRI"), which was meant to resolve certain competing claims among the parties with respect to the musical compositions involved in this action.  The PRI Agreement was negotiated in New York, and provides that New York law governs the agreement.

15.     None of the Defendants is a party to, or an intended beneficiary of, the PRI Agreement.

16.     The PRI Agreement in Section 1(c)(i) granted to PRI a non-exclusive "mechanical license" for the Copyrighted Compositions as embodied on "Records" released by PRI "and/or PRI's affiliates and/or PRI's licensees…."  The phrase "mechanical license" is a term of art in the music industry, referring to a license that allows a musical composition to appear on media such as phonorecords or compact discs.  By way of example, a "synchronization license" would permit the composition to be used in a film.  The only license granted in the PRI Agreement was a mechanical license.

17.     Section 1(c)(ii) of the PRI Agreement provides that the non-exclusive mechanical license granted by that section "shall not apply to Records … released by licensees and/or third parties not affiliated with PRI."

18.     The DPD Defendants are not affiliated with PRI.

19.     At the time the PRI Agreement was entered into, digital downloading of music did not exist and the licensing of the Copyrighted Compositions for digital download was not intended to be covered by the PRI Agreement, which is evidenced by the fact that only mechanical licenses to the Copyrighted Compositions are granted pursuant to the PRI Agreement.

20.     Plaintiffs are informed and believe, and on that basis aver, that on or about December 4, 1998, Seagram Company, Ltd ("Seagram") purchased 99.52 % of the issued and outstanding stock of Polygram, NV ("Polygram"), a Netherlands corporation, and sole shareholder of PRI, in a public tender offer.

21.     The documents filed with the United States Securities and Exchange Commission, (the "SEC") describing the terms of the Seagram tender offer disclose that, soon after the tender offer was complete, Seagram intended to reorganize Polygram by selling the assets of Polygram, or its subsidiaries, to Seagram's affiliated entities, including UNIVERSAL.

22.     Plaintiffs are informed and believe, and on that basis aver, that on or about December 10, 1998, Seagram did, in fact, purport to sell or otherwise transfer certain of PRI's assets, including the PRI Agreement, to UNIVERSAL consistent with the intention stated in the Seagram tender offer documents.

23.     The purported sale or transfer to Defendant UNIVERSAL of the license under the PRI Agreement was void and was not effective because Bridgeport did not consent to the purported transfer.

24.     Defendant UNIVERSAL, which is not a copyright owner of the Copyrighted

Compositions, has no rights whatsoever to grant licenses for any of the Copyrighted Compositions.

25.     Defendant UNIVERSAL has, directly or indirectly, through its agent, The Harry Fox Agency ("HFA"), and without authority from Plaintiffs, purported to grant licenses to third parties, including without limitation the DPD Defendants, for the digital reproduction and public distribution of sound recordings embodying the Copyrighted Compositions.

26.     The DPD Defendants operate sites on the World Wide Web through which each DPD Defendant makes available to its paying customers unauthorized copies of Plaintiffs' copyrighted compositions for downloading to storage media owned or operated by its customer.

27.     UNIVERSAL intentionally induced, encouraged, promoted and enabled such infringing activities to occur by purporting to license such actions, by providing unauthorized reproductions of Plaintiffs' copyrighted compositions and transmitting such reproductions to a DPD Defendant, or otherwise making such unlawful reproductions available to a DPD Defendant, through purported DPD licenses, for use in the DPD Defendant's infringing business activities.

28.     Plaintiffs are informed and believe, and on that basis aver, that UNIVERSAL and its agent HFA, intentionally induce, encourage, promote and enable the infringing acts of the DPD Defendants by purporting to authorize such conduct pursuant to licenses and other agreements providing for unauthorized reproduction of Plaintiffs' copyrighted compositions and for public distribution and public display of the infringing reproduction by means of the internet.

29.     Plaintiffs are informed and believe, and on that basis aver, that in exchange for providing infringing reproductions of Plaintiffs' copyrighted compositions, each DPD Defendant has agreed to pay, and has paid, to UNIVERSAL  amounts now unknown but that will be proven at trial.  Thus, UNIVERSAL and the DPD Defendants are building a business on, and seek to profit from, the daily infringement UNIVERSAL induces, purports to authorize, enables, facilitates and encourages.

30.     Plaintiffs are informed and believe, and on that basis aver, that Defendants' conduct infringes Plaintiffs' copyrights and other rights in compositions in addition to those identified in Exhibit A to this Complaint the identity of which is unknown at this time but which will be proven at trial.

31.     On several occasions, including July 6, 2004, and April 7, 2005, Plaintiffs gave notice to UNIVERSAL that the Defendants' use, reproduction, public distribution and/or public display of sound recordings embodying the Copyrighted Compositions infringes Plaintiffs' copyrights.  The DPD Defendants were so notified on July 6, 2004, and April 7, 2005.

32.     As of the date of this Complaint, Defendants have failed and refused, and continue to fail and refuse, to take corrective and appropriate action to remedy their infringement.

33.     As of the date of this Complaint, Defendants continue to infringe Plaintiffs' copyrights and other rights in and to Plaintiff's copyrighted compositions, including without limitation the Copyrighted Compositions

34.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered actual damages, including lost profits, lost opportunities, loss of goodwill, lost

publicity, attorney's fees and interest and, are entitled to compensatory and punitive damages, or, in the alternative, are entitled to statutory damages for willful infringement in the amount of $150,000.00 for each infringement as available under the law.

**FIRST CLAIM FOR RELIEF**
**FOR**
**COPYRIGHT INFRINGEMENT**
(Against Defendant UNIVERSAL)

35.     Plaintiffs here incorporate by this reference each and every allegation of Paragraphs 1 through 34, inclusive, as if fully set forth.

36.     Defendant UNIVERSAL has, without authority from Plaintiffs, purported to issue DPD licenses to the DPD Defendants to reproduce and publicly display and/or publicly distribute sound recordings embodying the Copyrighted Compositions.

37.     Defendant UNIVERSAL has, without authority from Plaintiffs, reproduced and transmitted, or otherwise made available, to the DPD Defendants data files containing sound recordings embodying one of the Copyrighted Compositions, resulting in an unauthorized reproduction and offering of the Copyrighted Composition for public distribution or public display.

38.     The foregoing conduct of Defendant UNIVERSAL was willful and malicious and constitutes copyright infringement in violation of 17 U.S.C. §§106, 115 and 501.

39.     As a direct and proximate result of Defendants' infringement, Plaintiffs have incurred damages, as described more fully above.  Therefore, Plaintiffs request that they be awarded actual damages, for each infringement, plus costs, interest, attorney's fees and punitive damages in an amount to be determined, or in the alternative, statutory damages for willful infringement in the amount of $150,000 for each infringement as available under the

law.

## SECOND CLAIM FOR RELIEF
## FOR
## COPYRIGHT INFRINGEMENT
### (Against the DPD Defendants)

40.     Plaintiffs here incorporate by this reference each and every allegation of Paragraphs 1 through 39, inclusive, as if fully set forth.

41.     The DPD Defendants, without authority from the Plaintiffs, have stored the data file received or obtained from UNIVERSAL, resulting in an unauthorized reproduction, and/or have offered the Copyrighted Compositions for public distribution and/or public display by means of their websites and in fact allowed for the digital download of the Copyrighted Compositions.  The DPD Defendants did so despite receiving notice of the infringement.

42.     The foregoing conduct of the DPD Defendants was willful and constitutes copyright infringement in violation of 17 U.S.C. §§106, 115 and 501.

43.     As a direct and proximate result of the DPD Defendants' infringement, Plaintiffs have incurred damages as described more fully above.  Therefore, Plaintiffs request that they be awarded actual damages for each infringement plus costs, interest, and attorney's fees, and punitive damages in an amount to be determined, or in the alternative, statutory damages for willful infringement in the amount of $150,000 for each infringement as available under the law.

## THIRD CLAIM FOR RELIEF
## FOR
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

(Against All Defendants)

44.     Plaintiffs here incorporate by this reference each and every allegation of Paragraphs 1 through 43, inclusive, as if fully set forth.

45.     As described above, an infringement of Plaintiffs' copyrights in the Copyrighted Compositions occurs each and every time UNIVERSAL reproduces and transmits, or otherwise makes available, to the DPD Defendants a data file containing a sound recording embodying one of the Copyrighted Compositions, resulting in an unauthorized copy and offering of the Copyrighted Composition for public distribution.

46.     As also described above, an infringement of Plaintiffs' copyrights in the Copyrighted Compositions occurs each and every time one of the DPD Defendants, without authority from the Plaintiffs, stores the data file received or obtained from UNIVERSAL, resulting in an unauthorized reproduction, or offers one of the Copyrighted Compositions for public distribution by means of its website.

47.     An infringement of Plaintiffs' copyrights in the Copyrighted Compositions also occurs each and every time one of the users of the websites operated by the DPD Defendants downloads to the user's computer a data file containing a sound recording embodying one of the Copyrighted Compositions.

48.     Each and every one of these infringements is intentionally induced, facilitated, encouraged and made possible by the Defendants.

49.     Through their conduct averred in this Complaint, Defendants, and each of them, have engaged and continue to engage in the business of knowingly and systematically inducing, causing, and materially contributing to the unauthorized reproduction, and/or public display and/or public distribution of copies of the Copyrighted Compositions and thus

to the infringement of Plaintiffs' copyrights in the Copyrighted Compositions

50.     The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of, and indifference to, Plaintiffs' rights.

51.     Defendants' conduct, as averred in this Complaint, constitutes contributory infringement of Plaintiffs' copyrights in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§106,115 and 501.

52.     As a direct and proximate result of the contributory infringement by Defendants, Plaintiffs are entitled to compensatory and punitive damages and Defendants' profits pursuant to 17 U.S.C. 504(b) for each separate act of infringement in an amount to be determined.

53.     In the alternative, Plaintiffs, and each of them, are entitled to statutory damages, pursuant to 17U.S.C. §504(c), in the amount of $150,000 with respect to each infringement as available under the law.

54.     Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C.§ 505.

**FOURTH CLAIM FOR RELIEF**
**FOR**
**VICARIOUS COPYRIGHT INFRINGEMENT**
(Against All Defendants)

55.     Plaintiffs here incorporate by this reference each and every allegation of Paragraphs 1 through 54, inclusive, as if fully set forth.

56.     At all times relevant to this action, the DPD Defendants, and each of them, had the right and ability to supervise and/or control the infringing conduct of a DPD Defendant's users by, without limitation, preventing, or terminating a user's access to the

-12-

DPD Defendant's website and computer servers and/or by refusing to provide connections to infringing music files but have failed to so do. As a direct and proximate result of such failure, users of the DPD Defendants' websites infringed Plaintiffs' copyrights in the Copyrighted Compositions, as discussed in more detail above.

57.     At all times relevant to this action, UNIVERSAL had the right and ability to supervise and/or control the infringing conduct of the DPD Defendants by, without limitation, preventing, or terminating a DPD Defendant's access to UNIVERSAL's computer servers and/or by refusing to provide connections to infringing music files but have failed to so do. As a direct and proximate result of such failure, the DPD Defendants have infringed Plaintiffs' copyrights in the Copyrighted Compositions, as discussed in more detail above.

58.     At all times relevant to this action, Defendants, and each of them, derived substantial financial benefit from infringements of Plaintiffs' copyrights in that UNIVERSAL has received substantial revenue from the DPD Defendants for the use of the Copyrighted Compositions and the DPD Defendants have received subscription or other use fees from their users without making any corresponding payments to Plaintiffs.

59.     The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifference Plaintiffs' rights.

60.     Defendants' conduct, as averred in this Complaint, constitutes vicarious infringement of Plaintiffs' copyrights in violation of Sections 106, 115, and 501 of the Copyright Act, 17 U.S.C. §§106,115 and 501.

61.     As a direct and proximate result of the vicarious infringement by Defendants, Plaintiffs are entitled to compensatory and punitive damages for each separate act of

infringement in an amount to be determined.

62.     In the alternative, Plaintiffs, and each of them, are entitled to statutory damages, pursuant to 17U.S.C. §504(c), in the amount of $150,000 with respect to each infringement as available under the law.

63.     Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

**FIFTH CLAIM FOR RELIEF
FOR
<u>DECLARATORY JUDGMENT</u>**
(By Plaintiffs against Defendant UNIVERSAL)

64.     Plaintiffs here incorporate by this reference each and every allegation of Paragraphs 1 through 63, inclusive, as if fully set forth.

65.     As of the date of this Complaint, Plaintiff Bridgeport has fully performed its obligations under the PRI Agreement.

66.     As explained more fully above, Universal has no rights under the Settlement Agreement between Bridgeport and PRI to issue any license to the Copyrighted Compositions as it has proposed to do in this action.

67.     Thus, a real and justiciable controversy exists concerning the issues discussed more fully above,

68.     Accordingly, Plaintiffs are entitled to a judicial declaration    that UNIVERSAL does not have a license pursuant to the PRI Agreement to reproduce and distribute the Copyrighted Compositions and that UNIVERSAL's reproduction of the Copyrighted Compositions and distribution of the Copyrighted Compositions through the DPD Defendants infringes Plaintiffs' copyrights in the Copyrighted Compositions.

-14-

### SIXTH CLAIM FOR RELIEF
### PERMANENT INJUNCTION
(Against All Defendants)

69.     Plaintiffs here incorporate by this reference each and every allegation of Paragraphs 1 through 68, inclusive, as if fully set forth.

70.     Defendants' conduct, as averred in this Complaint, is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.

71.     Plaintiffs have no adequate remedy at law.

74.     Pursuant to 17 U.S.C. §502, Plaintiffs, and each of them, are entitled to a permanent injunction prohibiting further infringements of Plaintiffs' copyrights by Defendants, and each of them.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

1.     On Plaintiffs' First through Fourth Claims for Relief, for damages in such amount as may by found, including punitive damages;  in the alternative, for statutory damages in the amount of not less than $150,000 with respect to each infringement, or for such other amount as may be proper pursuant to 17 U.S.C. §514(c).

2.     On Plaintiffs' First through Fourth and Sixth Claims for Relief, for a permanent injunction prohibiting further infringements of Plaintiffs' copyrights by Defendants, and each of them.

3.     On Plaintiffs' Fifth Claim for Relief, for a judicial determination and

-15-

declaration that UNIVERSAL does not have a license under the PRI Agreement to reproduce and distribute the Copyrighted Compositions and that UNIVERSAL's reproduction of the Copyrighted Compositions and distribution of the Copyrighted Compositions through the DPD Defendants infringes Plaintiffs' copyrights in the Copyrighted Compositions.

4.      For prejudgment interest according to law.

5.      For Plaintiffs' attorneys' fees costs and disbursements in this action pursuant to 17 U.S.C. §505.

6.      For such other and further relief as the Court may deem just and proper.


KING & BALLOW

By:  S//_____
        Richard S. Busch (SB 5613)
        1100 Union Street Plaza
        315 Union Street
        Nashville, Tennessee 37201
        (615) 259-3456 Telephone
        (615) 726-5417 Facsimile


LOCAL COUNSEL

GORDON, GORDON & SCHNAPP, P.C.

By:  S//_____
        Kenneth E. Gordon (KG 5703)
        437 Madison Avenue, 39th Floor
        New York, New York 10022
        (212) 355-3200 Telephone
        (212) 355-3292 Facsimile

**EXHIBIT A**
**COPYRIGHTED COMPOSITIONS**

| SONG TITLE | ALBUM |
|---|---|
| Agony of Defeet | 20th Century Masters: The Millennium Collection Best of Parliment |
| Agony of Defeet | Funked Up: The Very Best of |
| Agony of Defeet | Tear The Roof Off (1974-1980) |
| Agony of Defeet | The 12" Collection and More (Funk Essentials) |
| Agony of Defeet | The Best of Parliament: Give Up the Funk |
| Chocolate City | 20th Century Masters: The Millennium Collection: Best of Parliament |
| Chocolate City | Chocolate City |
| Chocolate City | Funked Up: The very Best Of |
| Chocolate City | Tear The Roof Off (1974-1980) |
| Chocolate City | The Best of Parliament: Give up the Funk |
| Do That Stuff | Clones of Dr. Funkenstein |
| Do That Stuff | Funked Up: The Very Best Of |
| Do That Stuff | Live: P Funk Earth Tour |
| Do That Stuff | Tear The Roof Off (1974-1980) |
| Do That Stuff | The Best of Parliament: Give Up The Funk |
| Funkin' For Fun | Clones of Dr. Funkenstein |
| Funkin' For Fun | Tear The Roof Off (1974-1980) |
| Gettin to Know You | Clones of Dr. Funkenstein |
| Give Up The Funk (Tear The Roof Off The Sucker) | 20th Century Masters: The Millennium Collection Best of Parliament |
| Give Up The Funk (Tear The Roof Off The Sucker) | Funked Up: The Very Best Of |
| Give Up The Funk (Tear The Roof Off The Sucker) | Mothership Connection |

-17-

| | |
|---|---|
| Give Up The Funk<br>(Tear The Roof Off The Sucker) | Tear The Roof Off (1974-1980) |
| Give Up The Funk<br>(Tear The Roof Off The Sucker) | The Best of Parliament: Give Up the Funk |
| Give Up the Funk<br>(Tear The Roof Off The Sucker) | Winning Combinations |
| Handcuffs | Mothership Connection |
| I Can Move You (If You Let Me) | Up For The Down Stroke |
| If It Don't Fit (Don't Force It) | Chocolate City |
| I've Been watching You<br>(Move Your Sexy Body) | Clones of Dr. Funkenstein |
| Let Me Be | Chocolate City |
| Liquid Sunshine | Motor-Booty Affair |
| Mr. Wiggles | Tear The Roof Off (1974-1980) |
| Night of the Thumpasorus Peoples | Mothership Connection |
| One Of Those Funky Things | Motor-Booty Affair |
| P-Funk (Wants To Get Funked Up) | Funked Up: The Very Best Of |
| P-Funk (Wants To Get Funked Up) | Live: P Funk Earth Tour |
| P-Funk (Wants To Get Funked Up) | Mothership Connection |
| P-Funk (Wants To Get Funked Up) | Tear The Roof Off (1974-1980) |
| P-Funk (Wants To Get Funked Up) | The 12" Collection And More ( Funk Essentials) |
| P-Funk (Wants To Get Funked Up) | The Best of Parliament: Give Up The Funk |
| Placebo Syndrome | Funkentelechy Vs. The Placebo Syndrome |
| Prelude | Clones of Dr. Funkenstein |
| Prelude | Tear The Roof Off (1974-1980) |
| Presence Of A Brain | Up For The Down Stroke |
| Ride On | Chocolate City |
| Ride On | Funked Up: The Very Best Of |
| Ride On | Tear The Roof Off (1974-1980) |

| | |
|---|---|
| Ride On | The Best of Parliament: Give Up The Funk |
| Ride On | Winning Combinations |
| Ridin' High | The 12" Collection and More (Funk Essentials) |
| Side Effects | Chocolate City |
| Supergroovalisticprosifunkstication (The Bumps Bump) | Mothership Connection |
| The Big Bang Theory | Tear The Roof Off (1974-1980) |
| The Big Bang Theory | The 12" Collection and More (Funk Essentials) |
| The Freeze (Sizzaleenmean) | Gloryhallastoopid |
| The Goose | Up For The Down Stroke |
| The Landing (Of The Holy Mothership) | Live: P Funk Earth Tour |
| The Motor-Booty Affair | Motor-Booty Affair |
| This Is The Way We Funk With You | Live: P Funk Earth Tour |
| Tear The Roof Off The Sucker Medley / Give Up The Funk (Tear the Roof Off The Sucker)/ Get Off Your Ass and Jam | Live: P Funk Earth Tour |
| Together | Chocolate City |
| Unfunky UFO | Mothership Connection |
| Up For The Down Stroke | 20th Century Masters: The Millennium Collection Best of Parliament |
| Up For The Down Stroke | Funked Up: The Very Best Of |
| Up For The Down Stroke | Tear The Roof Off (1974-1980) |
| Up For The Down Stroke | The 12" Collection and More (Funk Essentials) |
| Up For The Down Stroke | The Best of Parliament: Give Up The Funk |
| Up For The Down Stroke | Up For The Down Stroke |
| What Comes Funky | Chocolate City |
| Wizard of Finance | Funkentelechy Vs. The Placebo Syndrome |
| (You're A Fish and I'm A) Water Sign | Motor-Booty Affair |