```
UNITED STATES DISTRICT COURT                   (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
BRIDGEPORT MUSIC INC. and            : 05 Civ. 6430 (VM) (JCF)
SOUTHFIELD MUSIC, INC.,              :
                                     :           MEMORANDUM
                                     :           AND ORDER
                 Plaintiffs,         :
                                     :
     - against -                     :
                                     :
UMG RECORDINGS, INC., NAPSTER, LLC,  :
APPLE COMPUTER, INC., and YAHOO!,    :
INC.,                                :
                 Defendants.         :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The plaintiffs in this action allege that the defendants infringed their copyrights in certain musical compositions by offering them for digital download. They now move pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend the complaint. The defendants oppose most of the proposed amendments on grounds of delay, prejudice, and futility. For the reasons that follow, the plaintiffs' motion is granted.

Background

Plaintiffs Bridgeport Music Inc. and Southfield Music, Inc. (collectively, "Bridgeport") are copyright holders of various musical compositions that are the subject of a 1991 settlement agreement with Polygram Records International ("PRI"), the predecessor of defendant UMG Recordings, Inc. ("UMG"). (First Amended Complaint ("Am. Compl."), ¶¶ 14, 18). The 1991 agreement granted PRI a license to release the musical compositions on "records" (Am. Compl., ¶ 16), a term not expressly defined.

1

Bridgeport asserts that the licensing agreement did not cover digital distribution of the compositions. (Am. Compl., ¶ 24). It alleges that UMG infringed its copyright in the musical compositions by licensing the compositions for download to various parties, including defendants Apple Computer, Inc. ("Apple"), Napster, LLC ("Napster"), and Yahoo!, Inc. ("Yahoo"). (Am. Compl., ¶¶ 25-27).

Bridgeport filed the initial complaint on July 15, 2005, and amended it in December 2006, substituting UMG for Universal Music Group, Inc. and adding allegations regarding the infringement of rights of public display. (Am. Compl., ¶¶ 28, 36-37, 41, 49).

On June 4, 2007, Magistrate Judge Kevin N. Fox issued an order finding that "'streaming' . . . is within the ambit of the plaintiffs' amended complaint." (Order dated June 4, 2007 (the "6/4/07 Order") at 2). That order was affirmed by the Honorable Victor Marrero, U.S.D.J. on August 1, 2007. (Order dated Aug. 1, 2007, (the "8/1/07 Order")). Following a conference on July 26, 2007, I issued an order providing, among other things, that "[c]ounsel shall stipulate to amendment of the complaint to encompass all compositions governed by the 1991 PRI agreement and in which plaintiffs retain rights." (Order dated July 26, 2007, ¶ 8).

Bridgeport now seeks to amend its complaint a second time to (1) add a number of musical compositions to those already at issue, (2) assert allegations regarding the streaming of the compositions, (3) include MusicNet, Inc. ("MusicNet") as a defendant, (4)

2

incorporate allegations regarding rights of performance in the compositions at issue, (5) assert allegations regarding the licensing of the compositions for use as cellphone "ringtones," and (6) incorporate factual information that does not affect the substantive claims at issue in the suit.  The defendants consent to the first two changes but oppose the remainder.

Discussion

    A. Standard for Amendment

A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a); see also Oneida Indian Nation of New York v. City of Sherill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005).  Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend."  John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994); accord Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998).  Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

B. <u>Uncontested Changes</u>

As noted above, the defendants do not oppose the addition of musical compositions to the complaint as permitted by my July 26, 2007 Order. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend the Complaint ("Def. Memo.") at 1); Exh. A to Proposed Second Amended Complaint ("PSAC"), attached as Exh. B to Declaration of Richard Busch dated Oct. 19, 2007 ("Busch 10/19/07 Decl."), at 24-27). Nor, in light of the rulings of Judges Fox and Marrero, do the defendants oppose the inclusion of references to streaming content. (Def. Memo. at 1; PSAC, ¶¶ 23, 27, 31, 37, 45, 49, 56).

C. <u>Adding MusicNet as a Defendant</u>

The defendants oppose the addition of MusicNet as a defendant because the plaintiffs have purportedly delayed joinder, and this delay will cause substantial prejudice both to the defendants and to MusicNet. (Def. Memo. at 11-17). While motions to amend are generally governed by Rule 15(a), Rule 21 controls if the proposed amendment adds new parties. <u>Momentum Luggage & Leisure Bags v. Jansport, Inc.</u>, No. 00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001)(citing <u>Kaminsky v. Abrams</u>, 41 F.R.D. 168, 170 (S.D.N.Y. 1966)). Rule 21 states that a party may be added to an action "at any time, on just terms." In deciding whether to permit joinder, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15." <u>Soler v. G & U, Inc.</u>, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting <u>Fair Housing Development Fund Corp. v. Burke</u>, 55 F.R.D. 414, 419 (E.D.N.Y.

1972)); accord Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004); Momentum Luggage, 2001 WL 58000, at *2; Clarke v. Fonix Corp., No. 98 Civ. 6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999)).

   1. Good Cause

   The defendants argue that because a deadline of November 17, 2006 for joinder of parties and amendment of pleadings was set in this case pursuant to Rule 16, the joinder of parties after that deadline should only be on "good cause" as provided for by Rule 16(b)(4).  They rely upon Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000), which held that "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."  Id. at 340; accord Fahmy v. Duane Reade, Inc., No. 04 Civ. 1798, 2005 WL 2338711, at *4 (S.D.N.Y. Sept. 26, 2005); see also Lincoln v. Potter, 418 F. Supp. 2d 443, 453-55 (S.D.N.Y. 2006)(holding that motion to amend made after discovery deadline must first satisfy Rule 16(b) and then Rule 15).  However, "Parker did not mandate that the 'good cause' standard automatically apply in every case, but rather, upheld a trial court's discretion to deny a late application for failing to meet the 'good cause' requirement under Rule 16(b)."[1] Calabro v. Stone, No. CV 2003-4522, 2005 WL 327547, at *1 (E.D.N.Y.

---

[1] Whether the same admonition applies to amendment under Rule 21 is unclear.  Since the same liberal standard applies to amendment under Rule 21 as under Rule 15(a), it would be that the same discretionary relationship to the "good cause" requirement applies here.

Jan. 27, 2005); see also Zomba Recording Corp. v. MP3.com, Inc., No. 00 Civ. 6831, 2001 WL 770926, at *1 (S.D.N.Y. July 10, 2001) (acknowledging Parker but granting motion to amend).[2]

In any event, Bridgeport has shown good cause for its delay. "[A] finding of good cause depends on the diligence of the moving party." Lincoln, 418 F. Supp. 2d at 454 (quoting Parker, 204 F.3d at 340). "In other words, the movant must show that the deadlines [could] not be reasonably met despite its diligence." Fahmy, 2005 WL 2338711, at *3 (quoting Rent-A-Center, Inc. v. 47 Mamaroneck Avenue Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003). The defendants assert that Bridgeport was aware that UMG provided digital recordings of the plaintiffs' compositions to MusicNet at least three years ago, as evidenced by "cease and desist" letters that Bridgeport sent to MusicNet in June and July of 2004. (Cease and Desist Letters, attached as Exh. B to Declaration of Robert W. Lehrburger dated Nov. 5, 2007 ("Lehrburger 11/5/07 Decl.")). They also point to a spreadsheet they produced on October 20, 2006, which lists UMG's income from downloads of Bridgeport's compositions; payments are listed from MusicNet as well as other entities, some of which have been named as defendants. (Digital Sales Spreadsheet, attached as Exh. E to Lehrburger 11/5/07 Decl.). Therefore, they conclude, diligent practice by the plaintiffs would have resulted in the addition of MusicNet as a defendant long

---

[2] The defendants seek to distinguish Zomba by noting that it does not reference Rule 16(b). (Def. Memo. at 12 n.5). But given that Zomba interprets precisely the same language in Parker upon which defendants rely, it is hard to see why it would not apply here simply because it does not explicitly mention Rule 16(b).

before the deadline expired.

The plaintiffs assert, however, that MusicNet is in quite a different position from most, if not all, of the other entities that engaged in digital retail distribution of their compositions in that MusicNet "licenses music directly from UMG . . . and then licenses the music to third parties, providing a 'white label' service wherein the consumer believes that they are downloading music from the digital download company (e.g., Yahoo), but in fact MusicNet is providing the technology that allows the downloads and streams to occur." (Reply Memorandum of Law in Support of Plaintiffs' Motion to Amend the Complaint ("Pl. Reply Memo.") at 2; Deposition of David Weinberg dated June 21, 2007 ("Weinberg Dep."), attached as Exh. E to Busch 11/13/07 Decl., at 228-29; Deposition of John Jones dated Sept. 26, 2007 ("Jones Dep."), attached as Exh. F to Busch 11/13/07 Decl., at 40). As part of this arrangement, MusicNet assumes responsibility for obtaining licenses from the publishers of music that they release to third parties. (Jones Dep. at 158-59, 219-23). Bridgeport avers that it could not have known the full extent of MusicNet's activities or that "MusicNet's unique status warranted their joinder as a party" until document production was made by MusicNet in August 2007 and MusicNet's designee was deposed on September 26, 2007. (Pl. Reply Memo. at 2-5).

The defendants counter that the plaintiffs' description of how MusicNet's activities differ from those of other defendants is a "distinction without a difference" since, if the plaintiffs are

right about their interpretation of the 1991 PRI agreement, MusicNet would be liable for copyright infringement whether they transmitted the files to the customers themselves or provided the means for others to do so. (Def. Memo. at 15). But the plaintiffs' account of MusicNet's unique status is instructive: MusicNet is not merely obtaining licenses from UMG but is itself licensing compositions to third parties.[3] The plaintiffs seek to add MusicNet as a defendant "to avoid any potential claim that UMG is not responsible for agreements to which it is not a party." (Pl. Memo. at 17).

Bridgeport moved to amend its pleadings to add MusicNet three weeks after the deposition of Mr. Jones. UMG argues that MusicNet's status as a "white label" service, and hence its role in licensing compositions to third parties, should have been apparent to Bridgeport from the outset, as it is advertised on MusicNet's website. (Defendants' Sur-Reply Memorandum of Law in Opposition to Plaintiffs' Motion to Amend the Complaint ("Def. Sur-Reply") at 1-2; Printout of MusicNet Home Page as of July 10, 2004, attached as Exh. A to Declaration of Robert W. Lehrburger dated Nov. 16, 2007). But the mere knowledge that MusicNet offered white label service would not have established that it was engaged in licensing Bridgeport's compositions specifically. Bridgeport reasonably

---

[3] Bridgeport points out that it does not seek to add as defendants a number of other third parties identified in UMG's spreadsheet who do not engage in the same type of re-licensing activity as MusicNet. (Memorandum in Support of Plaintiffs' Motion to Amend Complaint ("Pl. Memo.") at 16-17; Digital Sales Spreadsheet).

8

waited until it could inquire further into the extent of MusicNet's activities with respect to Bridgeport's compositions before moving to add MusicNet as a defendant. See Friedl v. City of New York, 210 F.3d 79, 88 (2d Cir. 2000) (amendment allowed after discovery revealed additional relevant facts). Courts have permitted amendments where the time between a moving party's discovery of the relevant facts and the filing of the motion to amend was much longer. See, e.g., Securities and Exchange Commission v. DCI Telecommunications, Inc., 207 F.R.D. 32, 34-35 (S.D.N.Y. 2002) (plaintiff obtained discovery supporting amendment four months before motion); Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (plaintiff aware of facts asserted in amended complaint from outset of case). In sum, Bridgeport has demonstrated that it was sufficiently diligent in moving to amend to satisfy the good cause requirement of Rule 16.

        2. Prejudice

The defendants argue that, notwithstanding a showing of good cause for delay, leave to amend to add MusicNet to the action should be denied because they will be substantially prejudiced by such an amendment. See Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993) (delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend); accord Parker, 204 F.3d at 339; Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987). In determining whether the defendants would be prejudiced by the amendment, I must consider whether the addition of the proposed defendants "would: (i) require

9

the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." Block, 988 F.2d at 350. The longer the period of unexplained delay, the lesser the showing of prejudice required of the nonmoving party. Evans v. Syracuse City School District, 704 F.2d 44, 47 (2d Cir. 1983).

Here, UMG argues that were MusicNet to be added to this action, "all depositions [p]laintiffs seek to use against MusicNet would need to be retaken" since MusicNet was not represented at those depositions, leading to the expenditure of additional resources and delaying resolution of this matter. (Def. Memo. at 16). It is unclear, however, exactly how many depositions MusicNet would need to retake or how much additional discovery would be required, given that the claims against them are virtually identical to those against the other defendants. See Hampton Bays Connections, Inc. v. Duffy, 212 F.R.D. 119, 123 (E.D.N.Y. 2003)("repetitive depositions may not be necessary" and "even if additional discovery is needed, such discovery would not be extensive" because new claim "arises from the same set of facts as the original claims"). Moreover, the burden on to the current defendants of attending reopened depositions would be less because they have previously prepared for them. Even assuming that additional discovery would impose costs on MusicNet and the current defendants, "[a]llegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice." Randolph-Rand Corp. of New York v.

10

Tidy Handbags, Inc., No. 96 Civ. 1829, 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001) (internal quotation omitted). "[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." United States v. Continental Illinois National Bank & Trust Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989); accord A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y 2000).[4]

The interests of judicial economy also favor adding MusicNet as a party to this action over deferring claims against it to separate future action. The plaintiffs' claims against MusicNet are identical to those already in the case: they concern the distribution to third parties of various digital embodiments of specific compositions and whether such distribution was authorized by the 1991 PRI agreement. See S.S. Silberblatt, Inc. v. East Harlem Pilot Block Building 1 Housing Development Fund Co., 608 F.2d 28, 43 (2d Cir. 1979)("[T]he burden of undertaking discovery, which [the defendant] would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits."); accord UMG Recordings, Inc. v. Lindor, No. CV-05-1095, 2006 WL 3335048, at *4 (E.D.N.Y. Nov. 9, 2006). Moreover, federal

---

[4] UMG argues that this doctrine was developed in the context of Rule 15 amendment and should not apply where amendment is governed by Rule 16. They cite no authority for such a proposition, nor have I found any.

courts have consistently granted motions to amend where, as here, "it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings." Xpressions Footwear Corp. v. Peters, Nos. 94 Civ. 6136, 95 Civ. 8242, 95 Civ. 8243, 1995 WL 758761, at *2 (S.D.N.Y. Dec. 22, 1995).

    D. Allegations Regarding Public Performance Rights

Bridgeport seeks to amend the complaint to add allegations that the defendants infringed their right of public performance in the compositions at issue. (PSAC, ¶¶ 26, 27, 34, 42-45, 49, 53-54, 58). The defendants point out that because performance rights fall under a different section of the relevant statute, 17 U.S.C. § 106(4), the plaintiffs are in a sense adding a new basis of liability. They argue that such a change at this late date should be rejected as dilatory.

The plaintiffs' delay in adding this claim, however, is reasonable. As described above, the plaintiffs already seek to add claims regarding streaming of their copyrighted compositions, and it was previously determined that such claims are encompassed in this action. (6/4/07 Order at 2; 8/1/07 Order). UMG has consented to that change. Currently, there is "vigorous[] dispute" as to "whether streaming requires just a license for public performance, or whether both performance and mechanical license [sic] are needed." Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 998 (C.D. Cal. 2006). Thus, for Bridgeport to assert claims regarding streaming of its compositions, as all

12

parties agree it should be allowed to do, it may be necessary for it to assert performance rights in the compositions.[5]  The defendants contend that just because "streaming happens to implicate the right of public performance does not ipso facto bring that right within the scope of this action."  (Def. Sur-Reply at 3).  However, it is reasonably likely that full adjudication of Bridgeport's claims regarding streaming will require an evaluation of its performance rights in the compositions.  If Bridgeport wishes to assert that the 1991 PRI agreement reserves to it performance rights in the compositions, it makes little sense to leave that question aside for a subsequent action. See Magee v. Paul Revere Life Insurance Co., 172 F.R.D. 647, 649 (E.D.N.Y. 1997)(amendment under Rule 15(a) reflects "public policy favoring the efficient resolution of disputes on their full merits").

Moreover, as noted above, delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend. See Parker, 204 F.3d at 339; Block, 988 F.2d at 350.  The defendants contend that Bridgeport has demonstrated bad faith by previously arguing that streaming, while not expressly mentioned in the Amended Complaint, was covered by the "broad language" that Bridgeport "intentionally used in drafting [its] pleadings" (Letter

---

[5] It is also possible that a plaintiff could prevail in a claim regarding streaming content without asserting public performance rights in the composition. See Grokster, 454 F. Supp. 2d at 998 ("[M]usic publishers asserting their mechanical rights have prevailed in at least one infringement action against a streaming service provider.") (citing Rodgers and Hammerstein Organization v. UMG Recordings, Inc., No. 00 Civ. 9322, 2001 WL 1135811 (S.D.N.Y. Sept. 26, 2001)).

13

of Kenneth E. Gordon, dated May 24, 2007, attached as Exh. O to Lehrburger 11/5/07 Decl.), but now arguing that that supposedly "broad language" must be expanded to fully encompass their claim regarding streaming. (Def. Memo at 19). While there is some element of bootstrapping to the plaintiffs' request, it does not rise to the level of bad faith. Moreover, since the Court has ruled, and all parties now concede, that it makes sense to resolve claims regarding streaming of the plaintiffs' compositions in this action, it follows that litigation of performance rights in the compositions and with regard to the 1991 PRI agreement should be permitted insofar as they are implicated by streaming.

### E. Allegations Regarding Ringtones

Bridgeport also seeks to add allegations concerning the licensing of the disputed musical compositions at issue for use as ringtones. (PSAC, ¶¶ 23, 26, 27, 49). Specifically, it alleges that "UMG has recently purported to license Apple to use, reproduce, distribute, or perform compositions by way of ringtones." (Pl. Memo. at 7 n.2). The defendants oppose this change, arguing that Bridgeport lacks a sufficient factual basis for the claim. (Def. Memo. at 20-21).

A motion to amend may be denied as futile if the amendment would not withstand a motion to dismiss pursuant to Rule 12(b)(6). See Oneida Indian Nation, 337 F.3d at 168; Smith v. CPC International, Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000); see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 783 (2d Cir. 1984) (to overcome objections of

14

futility, moving party need only show "at least colorable grounds for relief"). The standard for dismissal under Rule 12(b)(6) was recently clarified by the Supreme Court in Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007). There, the Court explained that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Id. at __, 127 S. Ct. at 1964-65 (internal citations and quotation marks omitted).

Here, UMG asserts that "Apple does not offer and never has offered any of Plaintiffs' compositions . . . in connection with its ringtone product service." (Def. Memo. at 20). Moreover, it claims it has never even licensed content to Apple for use as ringtones, and thus Bridgeport's claim must fail for lack of an adequate factual basis. (Def. Memo. at 20; Def. Sur-Reply at 6-7).[6] But even under the revised standard set forth in Twombly, Bridgeport need only establish a basis to "raise a right to relief above the speculative level"; it need not prove the truth of its claim at this stage. Twombly, __ U.S. at __, 127 S. Ct. at 1965. Given that UMG admits having licensed Bridgeport's compositions to

---

[6] In response to discovery requests for documents reflecting such a licensing agreement, UMG stated that "there are no such documents." (Response to Plaintiffs Eighth Request for the Production of Documents dated Oct. 11, 2007, attached as Exh. R to Lehrburger 11/5/07 Decl., at 3-4).

15

Apple for various other purposes, Bridgeport's assertion that it has a good faith basis to believe that UMG has also done so for ringtones is sufficient to survive a motion to dismiss. The record is not definitive enough at this stage to support a conclusion that UMG would prevail as a matter of law. If, indeed, Bridgeport lacks a good faith basis for its allegations, the defendants may apply for sanctions at the appropriate time.[7]

### F. Factual Supplementation

Finally, Bridgeport seeks to amend its complaint to add factual material that does not alter its substantive legal claims.[8] Bridgeport claims that these changes are intended to "supplement the pleadings to conform to the evidence." (Pl. Memo. at 10). The defendants contend that such changes are an improper and unnecessary effort to "gild the lily." (Def. Memo. at 22-23). Courts have denied leave to amend where "the additional allegations merely reiterate and embroider the claims . . . already presented in the original complaint, adding little, if anything, of substance

---

[7] The defendants also strongly dispute Bridgepor's contention that "[t]he very act of licensing [content for use as ringtones] to Apple constitutes infringement by UMG." (Pl. Memo. at 7 n.2; (Def. Memo. at 20-21; Def. Sur-Reply at 6-7). As Bridgeport is entitled to pursue its allegations that Apple has in fact distributed its compositions for use as ringtones, I need not reach that issue here. I any event, I note that the Second Circuit has recently suggested that unauthorized licensing, even absent a further infringing act, may be sufficient to allege a violation of 17 U.S.C. § 106. See Davis v. Blige, 505 F.3d 90, 105 n.13 (2d Cir. 2007)("The unauthorized licensor also arguably violates the exclusive rights of the copyright owner to authorize who may use the copyright.")(internal quotations omitted).

[8] For instance, Bridgeport has added information regarding the alleged locations of the defendants' servers (PSAC, ¶¶ 31, 55), and the success of Apple's iPod sales. (PSAC, ¶ 35).

16

to the case." Scottish Air International v. British Caledonian Group, PLC., 152 F.R.D. 18, 30 (S.D.N.Y. 1993)(quoting Coleman v. Ramada Hotel Operating Co., 933 F.2d 470, 473 (7th Cir. 1991)); see also O'Brien v. Price Waterhouse, 740 F. Supp. 276, 284 (S.D.N.Y. 1990)("mere elaboration and increased verbiage concerning the same core allegations initially put forward" deemed insufficient to warrant amendment).  Here, however, Bridgeport is amending its complaint to add new substantive claims as well as the factual elaborations.  Since the complaint will be amended in any event and the defendants have not demonstrated any prejudice that would result from these factual additions, they will be permitted. In re Enron Corp., 367 B.R. 373, 384 (Bankr. S.D.N.Y. 2007) (permitting amendment to add factual allegations even though changes were arguably "superfluous"); Torn v. Rosen, No. 82 Civ. 3130, 1984 WL 734, at *3 (S.D.N.Y. Aug. 6, 1984) (permitting amendment even where "[p]laintiffs have used this opportunity to sharpen, and thereby arguably alter, the facts asserted in the complaint" and treating prejudice as more relevant inquiry).[9]

Conclusion

    For the reasons discussed above, Bridgeport's motion to amend

---

[9] Bridgeport also seeks to add a claim for "separate statutory damages [of $150,000] for each separate agreement" identified in its complaint. (SAC, ¶ 40).  The parties spill a great deal of ink debating the merits of this claim but are in agreement that this motion is not the proper procedural vehicle for such a debate. (Def. Memo. at 9 n. 4; Pl. Reply Memo. at 7-9; Def. Sur-Reply Memo. at 4-6).  I concur and decline to address the issue at this time.

its complaint is granted.[10]  Within ten days of the date of this order, counsel shall submit a proposed revised discovery schedule.

SO ORDERED.

*[signature: James C. Francis IV]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           January 10, 2008

Copies mailed this date:

Richard S. Busch, Esq.
King & Ballow
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201

Kenneth J. Gordon, Esq.
James M. Thayer, Esq.
Gordon, Gordon & Schnapp PC
437 Madison Avenue, 39th Floor
New York, New York 10023

Robert W. Lehrburger, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710

---

[10] The defendants' motion to submit a sur-reply is granted, and I have considered that submission in reaching my determination.

18